IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

CANAL INSURANCE COMPANY                                                        PLAINTIFF

v.                                                             CIVIL ACTION NO. 3:10cv78-DPJ-FKB

REBECCA HERRINGTON, ET AL.                                                  DEFENDANTS

ORDER

This declaratory-judgment action is before the Court on the Motion of Plaintiff Canal Insurance Company ("Canal") for Summary Judgment [46] declaring that its Policy No. PIA03140902 ("the Policy") provides no coverage for an accident that occurred on September 10, 2009.  There is no dispute that the tractor and trailer involved in the accident were not listed as insured vehicles.  But questions remain as to (1) whether the involved tractor and trailer were nevertheless covered as temporary substitute vehicles; (2) whether Canal's agent accepted the substitute coverage; and (3) whether an MCS-90 endorsement should be read into the policy.  Having fully considered the issues and the parties' submissions in light of the applicable standards, the Court concludes that no coverage existed.  Plaintiff's Motion for Summary Judgment should therefore be granted.

I.      Facts and Procedural History

For the past six or seven years, Defendant Charles Herrington has operated Brier Branch Farms ("Brier Branch"), a contract trucking company, as a sole proprietorship out of his home in Louisville, Mississippi.  Pl.'s Mot. Summ. J. [41], Ex. A, C. Herrington Dep. at 5, 8–10, 18.  For the past two or three years, Herrington has also operated Thorn Creek trucking ("Thorn Creek") as a sole proprietorship, although he forged his daughter Rebecca Herrington's signatures on certain documents to make it appear that she was operating the company.  Id. at 49.  In reality,

Rebecca was "nothing to Thorn Creek whatsoever other than she is the figurehead of it." *Id*. at 15.

On December 31, 2008, Canal issued the subject Policy to Thorn Creek. Mot. Summ. J. [46], Ex. C. Herrington applied for the coverage but signed the name "Rebecca M. Herrington" as "owner" on the application. *Id.* Ex. A, C. Herrington Dep. 49 & Ex. 1. Nevertheless, the Policy lists "Thorn Creek" as the named insured on the Declarations Page. Significant to the coverage issues, the Policy is a scheduled vehicle policy that covers only vehicles described therein. Specifically, it states:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

*Id.* Ex. C. At the time of the accident, a total of six vehicles (four tractors and two trailers) were listed on the Policy as covered autos. *Id.* Herrington owned all of the Policy's covered autos. Mot. Summ. J. [46], Ex. A, C. Herrington Dep. 36, 62.

There is no dispute that the tractor and trailer involved in this accident were not listed on the Policy. But, the Policy also provides coverage of additional "temporary substitute vehicle[s]" under limited circumstances. The Policy's "temporary substitute vehicle" language reads in relevant part:

> If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:
> . . . .
> 3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:
> a. Breakdown;
> b. Repair;

2

       c. Servicing;
       d. "Loss"; or
       e. Destruction.

Mot. Summ. J. [46], Ex. C. The Policy further provides that it "contains all the agreements between you and us concerning the insurance afforded," and that the Policy's "terms can be amended or waived only by endorsement issued by [Canal] and made a part of" the Policy. *Id.*

On September 9, 2010, at approximately 10:30 a.m., Herrington's wife called his local insurance agent to notify her that one of Thorn Creek's covered vehicles was being repaired and that Herrington would be using a non-covered tractor in its place for a few days. Mot. Summ. J. [46], Ex. A, C. Herrington Dep. 39–40. Later that day, the substitute vehicle was involved in a motor vehicle accident that allegedly injured another driver, Amanda Harper. After the accident, the Herringtons' local agent emailed Canal's general agent Southern Cross regarding the proposed substitution. Mot. Summ. J. [46], Ex. G, Ferguson Dep. 20–22 & Ex. 3.

Approximately 5 months after the accident, Amanda Harper and her husband Michael sued Thorn Creek and its driver Jerry Pugh in the Circuit Court of Winston County, Mississippi. Pl.'s Mot. Summ. J. [41], Ex. B, Underlying Compl. Canal then brought this suit against Rebecca Herrington, individually and d/b/a Thorn Creek Trucking; Pugh; Harper; Michael Harper; Herrington, individually and d/b/a Brier Branch Farms; and Safeco Insurance Company of America (the Harpers' liability and uninsured motorist coverage provider), seeking a declaration that it has no duty to defend or indemnify the Herrington defendants. Complaint [1]. Defendants Rebecca Herrington, individually and d/b/a Thorn Creek, and Herrington, individually and d/b/a Brier Branch, filed a counterclaim against Canal for misrepresentation and inadequate agent training and supervision and post-claim underwriting. Answer and Countercl.

[15].  Canal has moved for summary judgment on the claims asserted by and against it.  Mot. Summ. J. [46].  The Court has personal and subject matter jurisdiction and is prepared to rule.

II.     Standard of Review

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine

issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075 (5th Cir. 1994) (en banc).

III.   Analysis

    A.   The Coverage Issue

In this diversity case, the substantive law of Mississippi and, in particular, Mississippi law on the construction of insurance policies applies. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Under Mississippi law, the interpretation of an insurance policy's language presents a question of law. *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998). When examining an insurance contract, the Court should "read the policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result." *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998). The Court must give effect to the plain meaning of an insurance policy's clear and unambiguous language. *Robley v. Blue Cross/Blue Shield of Miss.*, 935 So. 2d 990, 996 (Miss. 2006).

The parties agree that neither the tractor nor the trailer involved in the accident were among the Policy's described covered autos, and the Court finds that the involved tractor-trailer was not a covered auto under the Policy. The parties disagree as to whether the involved tractor and trailer qualified for coverage under the Policy, either as "temporary substitute vehicle[s]," or through the actions of Herrington's insurance agent. The Court will consider each basis for coverage in turn.

1.     Temporary Substitute Vehicle

For the involved tractor and trailer to qualify as "temporary substitute vehicle[s]," they must not be owned by the Policy's insured, because the Policy defines a "temporary substitute vehicle" as an auto "you do not own."[1]  Mot. Summ. J. [46], Ex. C.  Canal asserts that the involved tractor and trailer cannot qualify as "temporary substitute vehicle[s]" because all the vehicles used by Herrington in both his trucking businesses were owned by him, and he is the de facto insured under the Policy.  The Harper Defendants[2] counter that because Herrington, not Rebecca Herrington or Thorn Creek, owned the involved tractor and trailer, and because Rebecca Herrington is listed as the owner of Thorn Creek on the Policy, the involved tractor and trailer were eligible "temporary substitute vehicle[s]" under the Policy.

The Policy lists "Thorn Creek Trucking" as the named insured.  To determine the effect of the ownership of the vehicles, the Court must answer a fundamental question: who is Thorn Creek?  Despite the presence of Rebecca Herrington's forged signature on certain Thorn Creek

---

[1]The reason for this requirement is plain: Canal assessed the bargained-for risk in covering the specifically listed vehicles and charged a premium sufficient to cover that risk.  If the "temporary substitute vehicle[s]" provision was not limited to exclude vehicles owned by the insured, "an operator of more than one truck [could] insure only one vehicle and in the event of an accident with any of his vehicles[,] take the position that the policy covered the vehicle involved in the accident."  *Utilities Ins. Co. v. Wilson*, 251 P.2d 175, 177 (Okla. 1952); *see* 8A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 117:93 ("It is generally required that the substitute vehicle not be owned by the insured; if such coverage was ordinarily extended, the insurer would be covering an uninsured vehicle for a single premium in lieu of the insured taking out separate coverage for his or her automobiles.  This enables the insurer to issue a policy upon a rate fair to both insured and insurer . . . .").  This is exactly what Herrington attempted.

[2]The Herrington Defendants seem to concede that the Policy did not cover the involved vehicles as "temporary substitute vehicle[s]."  Herrington Defs.' Resp. [57], at 2 ("[T]he Thorn Creek vehicle was not listed in the declarations page nor was it otherwise covered by the insurance policy issued.").

documents, Herrington's testimony indicates that he is Thorn Creek.  Specifically, Herrington testified that Brier Branch and Thorn Creek were "all pretty much the same operation," and that both Thorn Creek and Brier Branch "are basically Mr. Herrington doing business as a trucking business."  Mot. Summ. J. [46], Ex. A, C. Herrington Dep. 30, 18.  Herrington also admitted that he is "100 percent responsible for Thorn Creek," *id* at 15, that he operates the company as Charlie Herrington d/b/a Thorn Creek, *id.* at 55, and that his daughter is nothing but a "figurehead," *id.* at 15.  In fact, he admits using his daughter's name and creating Thorn Creek to get better insurance rates on his trucks; a couple of previous accidents on his record as Brier Branch had apparently raised his rates.  *Id.* at 17.  Given Herrington's candid admissions, no reasonable jury could view Thorn Creek as Rebecca's d/b/a rather than Herrington's d/b/a.  Herrington owned all vehicles used by Thorn Creek, and, according to him, operated Thorn Creek as a sole proprietorship.

A sole proprietorship is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity," and has no separate legal existence distinct from the operator of the business.  Black's Law Dictionary (9th ed. 2009); *see Ball v. Steadfast-BLK*, 126 Cal. Rptr. 3d 743, 747 (Cal. Ct. App. 2011) ("A sole owner is a sole proprietorship and a sole proprietorship is not a legal entity separate from its individual owner."); *Jefferson Parish Hosp. Serv. Dist. No. 2. v. K & W Diners, LLC*, 65 So. 3d 662, 667–68 (La. Ct. App. 2011) ("[A] sole proprietorship . . . is merely a designation assigned to a manner of doing business by an individual who is solely responsible for all of the debts and obligations of the business [and n]o legal distinction exists between the individual and the business."); *Ideal Lease Serv., Inc. v. Amoco Prod. Co., Inc.*, 662 S.W.2d 951, 952 (Tex. 1983)

("[A] sole proprietorship has a legal existence only in the identity of the sole proprietor."). Thus, no legal distinction exists between the named insured Thorn Creek and Herrington.

Other courts and commentators have observed that "temporary-substitute-vehicle" provisions do not apply when either the owner of the vehicle loans it to his or her sole proprietorship or a sole proprietorship loans a vehicle titled in its name to its sole proprietor. *See Edgley v. Lappe*, 342 F.3d 884, 889–90 (8th Cir. 2003) (construing insurance policy issued to "Harold and Benita Lappe d/b/a Lappes Express Cab" and holding that temporary-substitute-vehicle clause in policy precluded coverage for any vehicle owned by the Lappes "either individually or through their sole proprietorship"); *Carolina Cas. Ins. Co. v. Williams*, 945 So. 2d 1030, 1035–36, 1040 (Ala. 2006) (collecting cases) (construing policy issued to "W & W Trucking, Wendell Williams d/b/a" and holding that temporary-substitute-vehicle clause precluded coverage for vehicle owned by separate sole proprietorship operated by Williams); *CU Lloyd's of Texas v. Hatfield*, 126 S.W.3d 679, 685–86 (Tex. Ct. App. 2004) (construing policy issued to "Mays Younglandia, Benjamin F. May d/b/a" and holding that because the policy excluded coverage for vehicles owned by the insured, a vehicle owned by the individual proprietor was excluded from coverage); *cf.* 8A Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 117:99 ("Where an automobile is owned by or registered in the name or tradename of a sole proprietorship owned by the insured, the use of that automobile by the named insured or his spouse will not be covered under the temporary substitute clause."). The

involved tractor and trailer therefore cannot be "temporary substitute vehicle[s]" under the

Policy because they were owned by the Policy's named insured.[3]

        2.       Whether Notice Created Coverage

The Harper Defendants argue that there was nevertheless coverage for the involved tractor-trailer because Herrington's wife called Herrington's insurance agent on the morning of the accident to notify her that Herrington would be using the involved tractor for a few days while a covered tractor was being repaired. Defs.' Mem. [54], at 6–7. The Harper Defendants seem to suggest that the local agent was actually Canal's agent and that notice to her was sufficient to create coverage. The Court cannot accept the argument.

As an initial point, the Harpers never adequately explain how mere notice would create coverage. As discussed above, substituting one vehicle owned by the insured for another does

---

[3] The Harper Defendants make much of the effect of a Lease Agreement entered into between Herrington, as Lessor, and Rebecca Herrington d/b/a Thorn Creek, as Lessee, on December 30, 2007. Harper Defs.' Mem. [54], at 4–6; *see* Mot. Summ. J. [41], Ex. A, C. Herrington Dep., at Ex. 2, Lease Agreement. The Lease Agreement purports to lease several tractors and trailers owned by Herrington to Thorn Creek from December 31, 2007, through December 30, 2008, and provides that Herrington, as Lessor, would "be responsible [for] and pay all business expenses inclusive of but not limited to all insurance premiums . . . and maintain same in the name of THORN CREEK TRUCKING." *Id.* The Lease Agreement bears the purported signatures of Herrington and Rebecca Herrington, although Rebecca Herrington does not believe she signed the document. *Id.*; Pl.'s Mot. Summ. J. [46], Ex. D, R. Herrington Dep. 14; *see also id.* Ex. A, C. Herrington Dep. 57–58. The Harpers argue that while Thorn Creek had a possessory, insurable interest in the leased vehicles, it had no such interest in the involved vehicles, making them eligible "temporary substitute vehicle[s]." However, the Lease Agreement does nothing to change the fact that, as sole proprietorships owned and operated by Herrington, neither Brier Branch nor Thorn Creek have any legal identity apart from his. Simply, Brier Branch and Thorn Creek *are* Herrington. Herrington is the named insured under the Policy. All the vehicles used by Brier Branch and Thorn Creek were owned by Herrington, so none of them can qualify as a "temporary substitute vehicle" under the Policy. Finally, even if Rebecca Herrington was doing business as Thorn Creek, the Policy provides coverage for a "temporary substitute vehicle" used in place of "a covered 'auto' *you own* that is out of service." Mot. Summ. J. [46], Ex. C (emphasis added). Rebecca did not own any vehicle in dispute.

not trigger the automatic coverage afforded temporary replacement vehicles under the Policy. Thus, to bring the accident vehicles within the Policy's coverage, the carrier would have to accept the change. As the Policy explains, changes to the Policy must be made "with [Canal's] consent [and] only by endorsement issued by [Canal] and made a part of this policy." Mot. Summ. J. [46], Ex. C. The Harpers have not produced an endorsement modifying the Policy to add coverage for the accident vehicles. By the terms of the Policy, a phone call to a local agent is not sufficient to create coverage where none otherwise exists.[4]

   3.  MCS-90

The Herrington Defendants generically adopt the Harpers' arguments but then concede that the subject tractor and trailer were "not listed in the declarations page nor [were they] otherwise covered by the insurance policy." Herrington Defs.' Resp. [57], at 2. They argue instead that the Policy mistakenly omitted a federally mandated policy endorsement that would have provided coverage for the accident. Specifically, the Herrington Defendants argue that an MCS-90 endorsement should be read into the policy because Thorn Creek was engaged in transporting property in interstate commerce at the time of the accident.

---

[4]Even if mere notice sufficed, the record fails to demonstrate that Canal had notice before the accident because the local agent exercised neither actual nor apparent authority. First, the record is clear that no actual authority existed. *See* Mot. Summ. J. [46], Ex. C (declaration page listing Herrington Insurance Agency as the "Agent of Insured" and Southern Cross Underwriters, Inc., as Canal's "Authorized Representative"); *id.* Ex. H, Posner Aff. ¶¶ 6–9 (stating that local agent had no authority to bind coverage); Ex. G, Ferguson Dep. 11 (local agent's testimony that she reported to general agent). Apparent authority is likewise missing because the record fails to reflect "(1) acts or conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) detriment as a result of such reliance." *Thompson v. Chick-Fil-A, Inc.*, 923 So. 2d 1049, 1054 (Miss. Ct. App. 2006) (citing *Am. Income Life Ins. Co. v. Hollins*, 830 So. 2d 1230, 1237 (Miss. 2002)).

Under a regulation promulgated pursuant to the Motor Carrier Act of 1980, for-hire motor carriers operating motor vehicles transporting property in interstate commerce must obtain an MCS-90 endorsement to their liability policies.  The MCS-90 endorsement provides "that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy."  *Ill. Cent. R.R. Co. v. Dupont*, 326 F.3d 665, 666 (5th Cir. 2003); *see* 49 C.F.R. §§ 387.3, 387.7, 387.15 (2010).

Assuming that Thorn Creek was engaged in transporting property in interstate commerce such that the Policy should have included an  MCS-90 endorsement, the failure to include the endorsement to the Policy does not "give rise to the remedy [Defendants] seek[], namely a reformation of the [P]olicy deeming the endorsement to be a part of the [P]olicy."  *Ill. Cent.*, 326 F.3d at 668.  The regulations promulgated under the Motor Carrier Act place the burden on the insured, not the insurer, to obtain the necessary insurance coverage, including any mandated endorsements.  *Id.* at 669.  As such, the regulations do not "impos[e] a duty on the insurer to make sure that . . . motor carriers secure the required insurance," and the Court cannot read the endorsement into the Policy to provide coverage for any judgment recovered against Thorn Creek in the underlying action.  *Id.*

Therefore, because (1) the involved tractor and trailer were not described autos under the Policy, (2) they were not "temporary substitute vehicle[s]" under the Policy, (3) they were not afforded coverage by way of the phone call from Herrington's wife, and (4) the Policy contained no MCS-90 endorsement, the Court concludes that the there is no coverage for the subject

11

accident under the Policy. Canal is entitled to a declaratory judgment that it has no duty to defend and no duty to indemnify under the Policy for the subject accident.[5]

### B.     The Counterclaims

Canal has also moved for summary judgment on the Herrington Defendants' Counterclaims against it for misrepresentation and inadequate agent training and supervision and post-claim underwriting. The Herrington Defendants' sole reference to their counterclaims in their response is a single sentence: "The Herrington Defendants however submit that they detrimentally relied upon the advice of the producing agents . . . to secure coverage and their exhibition of apparent authority to bind coverage." Herrington Defs.' Resp. [57], at 2. This conclusory allegation fails to meet their burden under Rule 56. Faced with a motion for summary judgment, the Herringtons had the duty to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. Even if the Herringtons had not abandoned their counterclaims, however, the Court agrees that Canal is entitled to summary judgment on those claims for the reasons previously stated and the reasons stated in Canal's memorandum.

---

[5]The Harper Defendants make one final argument on the coverage question: that Canal failed to join necessary parties under Federal Rule of Civil Procedure 19 and that this failure will somehow result in a judgment that is prejudicial to them. Harper Defs.' Mem. [54], at 7. Their two paragraph argument on this issue contains no citations to authority and no explanation as to how the inclusion of either the Herrington Insurance Agency or Southern Cross could in any way impact the sole issue involved in Canal's claim against Defendants—whether the Policy covers the accident and underlying litigation. The Court can conceive of no way in which the addition of any parties could affect the outcome on the coverage question, and Defendants' Rule 19 argument is therefore without merit.

IV.     Conclusion

For the foregoing reasons, the Court finds that Plaintiff's motion for summary judgment should be granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 13th day of February, 2012.

                                                           s/ *Daniel P. Jordan III*
                                                           UNITED STATES DISTRICT JUDGE